IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROADWAY RETAIL LLC,<br><br>            Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE A,<br><br>            Defendants. | Case No.: 1:24-cv-12029<br><br>Judge Georgia N. Alexakis<br><br>Magistrate Judge Jeffrey T. Gilbert<br><br>JURY TRIAL DEMAND |

**FIRST AMENDED COMPLAINT**

Plaintiff Roadway Retail LLC (referred to herein as "Plaintiff") hereby brings this Amended Complaint against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A ("Defendant"), attached hereto, as follows:

**I.    JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 et seq., 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant because Defendant structures its business activities to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the alias identified on Schedule A attached hereto (the "Seller Alias"). Specifically, Defendant has targeted sales to Illinois residents by setting up

1

and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiff's patented inventions, as described below, (collectively, the "Unauthorized Products") to residents of Illinois. Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II. INTRODUCTION

3. Plaintiff filed this case to prevent e-commerce store operators who infringe upon Plaintiff's patented invention from further selling and/or offering for sale Unauthorized Products. The existence of the Unauthorized Products has hampered Plaintiff's ability to enter and expand its footprint in the market, a market within which Plaintiff should have exclusionary rights under its patent.

4. Defendant creates e-commerce stores under one or more Seller Aliases and then advertises, offers for sale, and/or sells Unauthorized Products to unknowing consumers. The Unauthorized Products identified in Schedule A are all sold through the same e-commerce store identified in Schedule A or otherwise arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendant takes advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendant attempts to avoid liability by operating under one or more Seller Aliases to conceal their identity, location, and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendant's infringement of its patented invention, as well as to protect consumers from purchasing Unauthorized Products over the internet. Plaintiff has been, and continues to be,

irreparably damaged through loss of market share (including the inability to generate and expand market share) and erosion of Plaintiff's patent rights because of Defendant's actions and therefore seeks injunctive and monetary relief.

### III.   THE PARTIES

5.   Plaintiff, Roadway Retail LLC, is a Delaware limited liability company registered to do business in the State of New York with its principal place of business at 400 Rella Blvd, #156, Montebello, NY 10901.

6.   Brainstream GmbH. located in Germany, is the assignee of the U.S. Patent No. 9,198,261 ("the '261 Patent").

7.   Plaintiff Roadway Retail LLC is the exclusive licensee with full and sole control over any enforcement and exploitation of the U.S. 9,198,261 ("the '261 Patent"). A true and correct copy of Plaintiff's Patent is attached hereto as **Exhibit 1**.

8.   The '261 Patent was issued on November 24, 2015. *See* **Exhibit 1**.

9.   The '261 Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

10.   Claim 19 of the '261 Patent reads

An illumination device that is operable while being transported and that can be placed in an object that can be opened and closed again, the illumination device comprising:

At least a first light source;

An electric energy storage device;

A switch device that comprises a control unit including a sensor unit with which a first switching unit is transferable from an open switching state into a closed switching state; and

A dimmer that is actuatable by the control unit and with which power supplied to the first light source can be abruptly or steadily reduced down to zero,

> Wherein the first light source is suppliable with electric power from the electric energy storage device when a first sensor of the sensor unit is touched and/or when said first sensor detects a motion, and
>
> Wherein the first sensor of the sensor unit includes a capacitive sensor. *See* **Exhibit 1**.

11. Upon acquiring the '261 Patent, Plaintiff began marketing an embodying product under its GlowGlass™ line of products, which are available for sale on Plaintiff's website at www.glowglassmirrors.com

12. Plaintiff's product is a high-quality portable lighted mirror that combines style and convenience for on-the-go beauty and grooming. Plaintiff's patented product easily fits in a handbag or travel kit without taking up space, mimics natural daylight with customizable brightness for precise makeup or grooming and is rechargeable with long-lasting battery life for eco-conscious consumers.

13. On information and belief, Defendant operates one or more e-commerce stores under the Seller Alias listed in Schedule A attached hereto. Tactics used by Defendant to conceal their identity and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendant's true identity and the exact interworking of their infringing network. If Defendant provides additional credible information regarding their identity, Plaintiff will take appropriate steps to further amend this Complaint as necessary.

## IV. DEFENDANT'S UNLAWFUL CONDUCT

14. The success of the invention claimed in the '261 Patent has resulted in significant infringement of Plaintiff's Patent. The significant infringement has hampered Plaintiff's ability to generate and expand market share for its GlowGlass™ line of products. Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has

identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), WhaleCo, Inc., ("Temu"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Alias. True and correct copies of the screenshot printouts showing the active e-commerce stores operating under the Seller Alias reviewed are attached as **Exhibit 2**.

15. The Seller Alias targets consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**). While the report set forth in Exhibit 3 refers to trademark counterfeiting, the same tactic is used by infringers of other intellectual property rights; including, as here, patent infringers who sell direct to consumers or bulk ship products to third party marketplaces.

16. As described in the report attached as Exhibit 3, counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, and, as a result, the U.S. economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id*. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id*. Additionally, it is estimated that the importation of counterfeit goods costs the United States government nearly $7.2 billion in

personal and business tax revenues in the same period. *Id*. Again, these statistics are similarly applicable to other types of infringement, including patent infringement.

17. Online marketplace platforms like those used by Defendant do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "*Combating Trafficking in Counterfeit and Pirated Goods*" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id*. at p. 161.

18. The very same concerns regarding anonymity, multi-storefront infringers, and slow and ineffective notice and takedown marketplace procedures impact Plaintiff's enforcement efforts when trying to assert its own patent rights.

19. Defendant has targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of Illinois.

20. E-commerce store operators like Defendant commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

21. E-commerce store operators like Defendant regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendant to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

22. E- commerce store operators like Defendant communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn or 123tro.com, that provide tactics for operating multiple online marketplace accounts and evading detection by intellectual property owners. These websites serve as hubs for sharing tactics to evade enforcement, providing detailed guidance on circumventing marketplace policies and masking their infringing activities. Additionally, platforms like sellerdefense.cn and 123tro.com monitor legal developments closely, notifying operators like the Defendant of newly filed intellectual property infringement lawsuits

by rights holders, including the Plaintiff. These websites advise e-commerce store operators to take swift action in response to such lawsuits by, e.g.: (a) temporarily halting sales of infringing products to minimize exposure; (b) rapidly withdrawing funds from accounts linked to their online stores to prevent seizure or freezing by enforcement actions; (c) transitioning to new payment platforms to obscure financial traces and continue operations undetected. This coordinated effort not only perpetuates infringement but also obstructs legitimate enforcement efforts, enabling operators to evade accountability while continuing to profit from unauthorized use of intellectual property.

23. Infringers such as Defendant typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendant maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

24. Defendant's unauthorized use and/or manufacturing of the invention claimed in Plaintiff's Patent in connection with the distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights is irreparably harming Plaintiff.

## COUNT I
## PATENT INFRINGEMENT (15 U.S.C. § 271) – THE '261 PATENT

25. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

26. As shown, Defendant knowingly and willfully manufactures, imports, distributes, offers for sale, and sells infringing products. Defendant, without any authorization or license from

8

Plaintiff, has knowingly, and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use products that infringe directly and/or indirectly the '261 Patent.

27. As shown in the claim charts attached hereto as **Exhibit 6**, the products being sold by Defendant infringe at least Claim 19 of the '261 Patent. The claim charts in **Exhibit 6** are provided for illustrative purposes and are based on actual products purchased by the Plaintiff. These charts are presented without the benefit of discovery or claim construction. Plaintiff reserves the right to modify its infringement theory as appropriate as the case progresses and additional information becomes available.

28. Specifically, Defendant has infringed and continues to infringe at least claim 19 of the '261 Patent by making, using, importing, selling, and/or offering to sell their infringing products in the United States without authorization or license from Plaintiff.

29. Defendant has profited by their infringement of the '261 Patent, and Plaintiff has suffered actual harm as a result of Defendant's infringement.

30. As a direct and proximate result of Defendant's infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendant's infringement of the '261 Patent in connection with the offering to sell, selling, or importing of products that infringe the '261 Patent, including such acts into the State of Illinois, is irreparably harming Plaintiff. Defendant's wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented inventions as well as the lost sales and loss of repeat sales stemming from the infringing acts.

31. Defendant's infringement has been and continues to be willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

32. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendant is preliminarily and permanently enjoined by this Court from continuing their infringement of the '261 Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

33. Plaintiff is entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

## COUNT II
## UNFAIR COMPETITION (15 U.S.C. §1125(a))

34. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

35. Despite Plaintiff having valid and enforceable patents, which were embodied in Plaintiff's Products, and being offered for sale to consumers in what should have been an otherwise exclusive market, Defendant has developed, manufactured, imported, advertised, and/or sold Unauthorized Products that infringe upon Plaintiff's Patent. *See* **Exhibit 2** and **Exhibit 6**. These acts of infringement have prevented Plaintiff from generating and expanding its market share in what should have been an exclusive field.

36. By selling products which infringe upon Plaintiff's Patent, Defendant is competing for sales with Plaintiff and Plaintiff's Products with products that Defendant is prohibited from selling under U.S. Patent law.

37. By selling products that infringe upon Plaintiff's Patent, Defendant is competing for sales against Plaintiff in an unfair and unlawful manner.

38. Defendant's unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of Unauthorized Products creates express and implied misrepresentation that Unauthorized Products were created, authorized, or approved by Plaintiff as the owner of the '261 Patent, allowing Defendant to profit from the goodwill, time, research, and development of the invention as embodied in Plaintiff's Patent and Plaintiff's embodying Products, while causing Plaintiff irreparable and immeasurable injury.

39. On information and belief, Defendant has intentionally and blatantly infringed upon Plaintiff's Patent by selling Unauthorized Products to take unfair advantage of the enormous time, effort, and expense spent in connection with the '261 Patent and Plaintiff's efforts to cultivate a successful market for the invention embodied in Plaintiff's Patent and in Plaintiff's Products in online marketplaces.

40. On information and belief, Defendant has offered to sell and knowingly sold Unauthorized Products with the understanding that, as foreign entities, any enforcement efforts by Plaintiff would be difficult as many countries, including and especially China, make enforcement efforts of foreign IP difficult and collection of any judgments highly improbable.

41. On information and belief, to the extent enforcement efforts are made against Defendant, Defendant will merely ignore the efforts if they are permitted to move any assets out of their marketplace accounts and can easily create new accounts for online marketplaces to sell Unauthorized Products – with little recourse available to Plaintiff.

42. Defendant has engaged in a pattern of unfair competition by operating storefronts in e-commerce marketplaces with the intent to defraud customers and evade legal and financial responsibilities.

43. Specifically, Schedule A Defendants tend to engage in the following unlawful activities that collectively constitute unfair competition and undermine the integrity of the marketplace:

   a. defendants systematically manipulate marketplace systems by diverting funds from marketplace accounts into personal or untraceable financial accounts. This practice unlawfully extracts financial resources from the marketplace while depriving rightful owners and stakeholders of their earnings. By leveraging such diversion tactics, defendants avoid payment of legitimate fees, charges, and potential damages owed due to their infringing activities, creating an uneven playing field and harming competitors.

   b. upon detection of their infringing activities or facing financial scrutiny, defendants abruptly close their storefronts to evade investigation, enforcement actions, or legal accountability. This intentional act of shuttering operations prevents effective recourse for intellectual property owners and allows defendants to avoid marketplace penalties, restitution, and damages owed to injured parties.

   c. after closing their storefronts, defendants routinely reopen under new business entities, names, or aliases. This practice of entity cycling is designed to circumvent marketplace policies, intellectual property enforcement mechanisms, and legal accountability. By engaging in this deceptive practice, defendants create confusion for consumers, erode trust in the marketplace, and gain an unfair advantage over competitors who comply with marketplace rules and legal requirements.

   d. defendants employ tactics such as altering product listings, misrepresenting the origin or authenticity of goods, and concealing the infringing nature of their

activities. These practices mislead consumers and harm the reputation and market position of legitimate businesses.

e. defendants utilize sophisticated networks and tools, including third-party services and forums, to share strategies for evading detection, liquidating funds, and masking their operations. This coordinated effort frustrates intellectual property enforcement and unfairly gives defendants a competitive edge by operating outside the bounds of lawful commerce.

44. These practices collectively represent unfair competition, as Defendant not only profits from infringing activities but also exploits systemic vulnerabilities to the detriment of lawful marketplace operators, intellectual property owners, and consumers.

45. Defendant's acts, as described herein, violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendant's sale and/or offer of sale of products which infringe Plaintiff's Patents, constitutes unfair competition. Defendant has engaged in practices that create consumer confusion, misrepresentation, and deception in the marketplace. Specifically:

a. Defendant knowingly markets and sells products that infringe Plaintiff's patents, falsely representing these infringing goods as legitimate or authorized products. This misrepresentation deceives consumers into believing they are purchasing products that meet the same standards of quality, innovation, and design as those protected by Plaintiff's patents.

b. Defendant's infringing products, often indistinguishable from the patented designs or features of Plaintiff's products, are deliberately marketed in a manner that causes confusion among consumers regarding the source, sponsorship, or affiliation of the goods. Defendant's Unauthorized Products are also marked down in prices. This

      undermines Plaintiff's brand reputation and goodwill while unfairly benefiting Defendant.

    c. By circumventing patent protections, Defendant avoids the costs associated with lawful product development, manufacturing, and marketing. This gives Defendant an unfair economic advantage over Plaintiff and other competitors in the marketplace, enabling them to sell infringing products at a lower price point while profiting from Plaintiff's intellectual property.

    d. Defendant's unlawful actions dilute the value of Plaintiff's patented innovations and create a distorted marketplace where legitimate operators are forced to compete with infringing goods. This undermines consumer trust and the fair competition principles intended to be upheld by the Lanham Act.

46.    Defendant's actions, therefore, constitute unfair competition in violation of Section 43(a) of the Lanham Act. Their sale and offer for sale of infringing products not only harms Plaintiff's business and reputation but also disrupts fair trade practices and deceives consumers, warranting immediate legal redress and remedies to protect Plaintiff's rights and restore marketplace integrity.

47.    Plaintiff has no adequate remedy at law and, if the Defendant's activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1)    That Defendant, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      a.      Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiff's Patent; and

      b.      Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patent.

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, such as Amazon, eBay, Temu, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of goods that infringe Plaintiff's Patent.

3) That Judgment be entered against Defendant finding that they have infringed upon Plaintiff's Patent.

4) That Judgment be entered against Defendant finding that infringement of Plaintiff's Patent has been willful.

5) That Plaintiff be awarded damages for such infringement in an amount to be proven at trial, in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284, together with interests and costs.

6) That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendant's willful infringement of Plaintiff's Patent.

7) A finding that this case is exceptional under 35 U.S.C. § 285.

8) A finding that Defendant engaged in unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

9) That Plaintiff be awarded its reasonable attorneys' fees and costs.

10) Award any and all other relief that this Court deems just and proper.

15

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 6, 2025               Respectfully submitted,

/s/Edward L. Bishop
Edward L. Bishop
ebishop@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com
Sameeul Haque
shaque@bdl-iplaw.com
BISHOP & DIEHL, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Tel.:   (847) 969-9123
Fax:   (847) 969-9124

*Counsel for Plaintiff, Roadway Retail LLC*